2024 IL App (2d) 230295-U
No. 2-23-0295
Order filed May 14, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Nos. 19-CF-815 19-TR-28051 |
| TAMMY JEAN NEWSOME, | ) ) | Honorable James S. Cowlin, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Hutchinson and Kennedy concurred in the judgment.

**ORDER**

¶ 1   *Held*:  We agree with appellate counsel that there is no potentially meritorious basis for appeal.  Therefore, we grant counsel's motion to withdraw, and we affirm the trial court.

¶ 2   After a jury trial in the circuit court of McHenry County, defendant, Tammy Jean Newsome, was found guilty in case Nos. 19-CF-815 and 19-TR-28051 of driving while her license was revoked or suspended (625 ILCS 5/6-303(a) (West 2018)), obstructing identification (720 ILCS 5/31-4.5(a) (West 2018)), and improper passing of an emergency vehicle (625 ILCS 5/11-907(a)(2) (West 2018)).  When defendant was charged with these offenses, she had been released

on bond in case No. 18-CF-541, in which she was charged with aggravated driving under the influence of alcohol (DUI) (*id.* § 11-501(d)(1)(A)). Defendant represented herself at trial in case Nos. 19-CF-815 and 19-TR-28051. Special Public Defender Brian Stevens (who represented defendant prior to trial) served as standby counsel.

¶ 3    On appeal, defendant argued that the trial court failed to conduct a proper inquiry into her *pro se* allegations of ineffective assistance of counsel against Stevens. We remanded the case for proceedings in accordance with *People v. Krankel*, 102 Ill. 2d 181 (1984), and its progeny. *People v. Newsome*, Nos. 2-22-0165 & 2-22-0166, cons., ¶ 10 (2023) (unpublished summary order under Illinois Supreme Court Rule 23(c)) (*Newsome I*). After a hearing on remand, the trial court found no merit in the ineffectiveness allegations. Defendant filed a notice of appeal, and the Office of the State Appellate Defender (OSAD) was appointed to represent her. The appellate defender has moved to withdraw. We grant the motion and affirm the trial court for the reasons discussed below.

¶ 4                                    I. BACKGROUND

¶ 5    The charges in case Nos. 19-CF-815 and 19-TR-28051 arose following a traffic stop on September 19, 2019. The public defender represented defendant in these cases and case No. 18-CF-541, all three of which were assigned to Judge Robert A. Wilbrandt Jr. Based on the charges in case Nos. 19-CF-815 and 19-TR-28051, the court revoked defendant's bond in case No. 18-CF-541, reset the bond to $60,000, and ordered her to wear a secure continuous remote alcohol monitor (SCRAM), which measures the wearer's blood alcohol level, and to abstain from the use of alcohol and "substances prohibited by the SCRAM Program [R]ules."

¶ 6    At a pretrial conference on December 5, 2019, in case No. 18-CF-541, defense counsel asked for a continuance to investigate the reliability of the breath testing device used in the case. The trial court denied the motion and set the case for a jury trial on December 9, 2019.

¶ 7     On December 9, 2019, defendant's attorney, Assistant Public Defender Kim Messer, advised the trial court that defendant had recently filed *pro se* motions and that Messer did not wish to adopt the motions. The court admonished defendant that she would not be permitted to present *pro se* motions while represented by counsel. The court further advised defendant that, if she chose to proceed *pro se* on the motions, she would not be entitled to appointed counsel at trial. Defendant chose to proceed with her motions and forego counsel at trial.

¶ 8     The matter was immediately assigned to Judge Michael W. Feetterer, who held a hearing that same day on defendant's *pro se* motion for substitution of judge for cause. Defendant advised Judge Feetterer that Judge Wilbrandt had presided over the prosecution of one Diane Madsen for violating an order of protection that defendant had obtained against Madsen. Defendant claimed that, in violation of the Rights of Crime Victims and Witnesses Act (Act) (725 ILCS 120/1 *et seq.* (West 2018)), the State dismissed the charges against Madsen without notifying defendant and that Judge Wilbrandt did not inquire whether defendant received notice. Defendant also complained about Judge Wilbrandt's refusal to grant a continuance for defense counsel to review or obtain certain discovery materials. Judge Feetterer denied the motion, reasoning that a judge's adverse rulings are insufficient grounds to establish bias warranting a substitution of that judge.

¶ 9     Appearing again that same day before Judge Wilbrandt, defendant presented her *pro se* motion for appointment of a special prosecutor because the State's Attorney's Office had violated her rights under the Act. The court denied the motion. Shortly thereafter, the court brought the prospective jurors into the courtroom. However, court was recessed for lunch before jury selection began. When the proceedings resumed, defendant failed to appear, and the court issued a warrant for her arrest.

¶ 10    Defendant was ultimately arrested in July 2021.  She posted bond on August 1, 2021, and appeared before the trial court on August 10, 2021.  Messer was present in the courtroom and requested that a special public defender be appointed to represent defendant.  The court appointed Stevens, who was not present.  The prosecutor advised the court that defendant had been released on bond without a SCRAM device.  The court ordered defendant to obtain a SCRAM device within 72 hours or she would violate her bond.  The prosecutor remarked that defendant "was also previously subject to drug and alcohol screens."  The court responded, "All of those previous conditions of her bail, the warrant did not terminate those."  He added, "They are still conditions of her bail as far as this Court is concerned.  So she's going to be subject to alcohol tests.  I don't think there was a drug problem, but I think there is an alcohol problem."  The prosecutor then stated that she would "enter an order indicating that all the previous conditions remain in full force and effect."  The record contains a written order containing that language.

¶ 11    On August 17, 2021, Stevens moved for an extension of time for defendant to obtain a SCRAM device.  The motion indicated that defendant owed $1364 to the firm that administered the SCRAM program and that she could not obtain the device until she paid that amount.  The trial court denied the motion and ordered defendant to be taken into custody until she obtained the SCRAM device.  The court released $1400 from her bond to pay the SCRAM program fees.

¶ 12    On September 7, 2021, Stevens filed a motion to quash defendant's arrest and suppress evidence in case Nos. 19-CF-815 and 19-TR-28051.  The motion argued that defendant was unlawfully stopped while driving.  The arresting officer, Spring Grove police officer Lee Redlin, testified that, at about 10:30 p.m. on September 19, 2019, he was assisting another officer with a traffic stop on Wilmot Road.  Redlin's squad car was parked partially in the southbound lane of Wilmot Road.  A blue pickup truck drove past in the southbound lane without slowing down or

moving over. Redlin deemed this a traffic violation. Spring Grove police sergeant Jason Hintz had arrived in his squad car sometime before the truck passed. Hintz saw the truck and told Redlin that it "was a little too close for comfort." Redlin instructed Hintz to stop the truck. At that time, Redlin did not know the truck's make, model, or license plate number. He also did not know the truck's speed as it passed. Hintz drove away and ultimately pulled over a vehicle. When Redlin finished assisting with the traffic stop, he joined Hintz and saw that he had pulled over a blue pickup truck driven by defendant. Redlin arrested defendant. Following Redlin's testimony, Stevens argued that the State failed to prove that defendant drove the pickup truck that committed the violation. The trial court denied the motion.

¶ 13    On September 16, 2021, the State filed a motion to increase defendant's bond because she had tested positive for tetrahydrocannabinol (THC), in violation of her bond conditions. At the hearing on the motion, Stevens advised the trial court that defendant wanted Stevens to file a response she had prepared to the State's motion. However, Stevens declined to do so because "there [were] things in [the motion] that [he] was not present for, as well as things [he] [did not] agree with."

¶ 14    At the September 21, 2021, hearing on the motion, defendant testified that she had taken THC gummies for pain. She did so on the belief that the conditions of her pretrial release entailed testing only for alcohol, not THC. Stevens argued that the State's motion should be denied because defendant believed that she was prohibited from using alcohol, not THC, and she used the gummies for medical purposes. The trial court granted the State's motion and increased defendant's bond to $70,000. Finding that defendant violated her bond conditions by ingesting THC, the court ordered her to be taken into custody. Subsequently, for unclear reasons, defendant was released

from custody without posting sufficient bond. On September 24, 2021, the court ordered her back into custody.

¶ 15    On September 28, 2021, defendant waived her right to a jury trial in case Nos. 19-CF-815 and 19-TR-28051. The trial court set October 15, 2021, for a bench trial in those two cases and status in case No. 18-CF-541.

¶ 16    On October 8, 2021, defendant filed a *pro se* motion to discharge Stevens and appoint a new special public defender to represent her. She alleged that Stevens provided ineffective assistance of counsel. Specifically, Stevens (1) failed to communicate with her as to her need to obtain a SCRAM device; (2) "did not even attempt to obtain [defendant's] court file to prepare any motions on [her] behalf until August 16, 2021"; (3) failed to adequately prepare for the hearing on her motion to extend time for her to obtain a SCRAM device; (4) would not meet with her at his office because of COVID-19; (5) did not adequately represent her at the hearing on the State's motion to increase her bond; and (6) represented her inadequately at the hearing on her motion to suppress in that he failed to subpoena all the officers who were at the scene and did not object to hearsay testimony from Redlin.

¶ 17    Also, between October 12 and October 14, 2021, defendant filed *pro se* motions to (1) vacate or clarify the trial court's order increasing her bond, (2) withdraw her jury waiver, and (3) reconsider the denial of her motion to suppress. On October 14, 2021, Stevens filed a motion to withdraw.

¶ 18    On October 15, 2021, the scheduled trial date, the trial court noted Stevens's motion to withdraw and defendant's various *pro se* motions. The court indicated that it would not consider defendant's *pro se* motions while she was represented by counsel. The court explained that defendant had the right to be represented by the public defender but did not have the right to choose

which member of the public defender's office represented her. The court gave defendant a choice between Stevens's representation and self-representation. If she chose the latter, the court would hear her *pro se* motions and appoint Stevens as standby counsel at trial. Defendant chose the latter option. The court allowed defendant to withdraw her jury waiver and appointed Stevens as standby counsel at trial. The court denied defendant's motion to reconsider the denial of her motion to suppress and took under advisement her motion to vacate or clarify the order increasing bond. The court set October 18, 2021, for a jury trial in case Nos. 19-CF-815 and 19-TR-28051 and for status in case No. 18-CF-541.

¶ 19    On October 18, 2021, defendant was tried before a jury in case Nos. 19-CF-815 and 19-TR-28051. She represented herself and was found guilty of all charges. She appealed. As noted, we found in *Newsome I* that the trial court failed to fulfill its duties concerning defendant's allegations in her October 8, 2021, motion that Stevens provided ineffective assistance. *Newsome I*, Nos. 2-22-0165 & 2-22-0166, cons., ¶ 7. We said:

> "Here, the trial court did not inquire into the defendant's claims that her attorney was not providing her with the effective assistance of counsel. Although the trial court properly informed the defendant that she did not have the right to proceed both *pro se* and have an attorney represent her, that admonishment did not satisfy the trial court's obligation to review the defendant's claims [citation] and inquire into their bases [citation]. We therefore must remand for the trial court to conduct a proper inquiry. [Citation.]" *Id.*

¶ 20    On remand following *Newsome I*, Judge James S. Cowlin conducted a *Krankel* hearing. (By that point, Judge Wilbrandt was retired.) The trial court asked defendant to detail her claims of ineffectiveness. She stated that she had sought to replace Stevens with a new special public defender because Stevens's lack of communication "culminated into some bad advice." She noted

that Stevens was not present in court on August 10, 2021, when she was given 72 hours to obtain a SCRAM device. She also "had trouble reaching [Stevens] in regard to the 72-hour ankle bracelet." At that time, Stevens "didn't even have the file," which, defendant noted, contained a transcript of the December 9, 2019, proceeding in case No. 18-CF-541. Defendant believed that Stevens needed to review that transcript "to understand what he was stepping into." Defendant also complained that Stevens wanted her to meet him outside Judge Wilbrandt's courtroom at a time when, if she were recognized, she would likely be taken into custody because she did not have a SCRAM device as ordered.

¶ 21 Defendant also claimed that Stevens's performance at the hearing on the motion to suppress was deficient. She stated that she had told Stevens that she was pulled over by Hintz, not Redlin (who traveled to the location of the traffic stop and arrested her). According to defendant, Redlin testified that he did not know the speed of the vehicle when it passed and did not see the driver or whether there was a passenger. Further, Hintz, not Redlin, commented that the vehicle was too close when it passed. Defendant contended that Stevens should have objected on hearsay grounds to Redlin's testimony because "Hintz was the one who saw it, and he wasn't there to testify."

¶ 22 Defendant also contended that Stevens should have (1) filed a written response to the State's motion to increase her bond and argued that the trial court did not intend for the bond conditions to require testing for substances other than alcohol; (2) moved for substitution of judge on the basis that Judge Wilbrandt improperly mentioned in open court that defendant had a prior record of DUIs and other traffic offenses; and (3) subpoenaed Hintz to testify at trial because he was "the officer who actually saw the violation." Finally, she asserted that Stevens pressured her to waive her jury right.

¶ 23    Stevens responded that (1) he and defendant communicated at length by e-mail and on court dates; (2) he believed that it was "pretty clear" that the trial court's original bond order prohibited defendant from having THC in her system, and, in view of that, he gave his best argument that her bond should not be increased; (3) subpoenaing Hintz for trial might well have damaged defendant's case, because Hintz might have identified her as the driver who committed the infraction; and (4) he did not pressure defendant into waiving her jury right, and, in any event, defendant ultimately was permitted to withdraw her jury waiver.

¶ 24    Judge Cowlin concluded that defendant's ineffectiveness allegations were meritless. As noted, defendant appealed, and OSAD was appointed to represent her.

¶ 25    The appellate defender now moves to withdraw as counsel per *Anders v. California*, 386 U.S. 738 (1967), and *People v. Jones*, 38 Ill. 2d 384 (1967). In her motion, counsel states that she read the record and found no issue of arguable merit. Counsel further states that she advised defendant of her opinion. Counsel supports her motion with a memorandum of law providing a statement of facts and an argument as to why this appeal presents no issue of arguable merit. We advised defendant that she had 30 days to respond to the motion. Defendant has filed a response.

¶ 26                              II. ANALYSIS

¶ 27    Counsel indicates that she considered the following issues for appeal: (1) whether Judge Cowlin conducted a proper *Krankel* hearing and (2) whether Judge Cowlin erred in rejecting defendant's claims of ineffective assistance of counsel. Counsel concludes that neither of these issues has arguable merit. We agree.

¶ 28    We first consider whether Judge Cowlin conducted a proper *Krankel* hearing. In *People v. Moore*, 207 Ill. 2d 68, 77-79 (2003), our supreme court explained the *Krankel* procedure as follows:

"In [*Krankel*,] the defendant's trial counsel failed to contact an alibi witness or to present an alibi defense at trial. The defendant raised a *pro se* posttrial challenge to his attorney's competence at trial. The parties agreed that the trial court should have appointed counsel, other than his originally appointed counsel, to represent [the] defendant at the posttrial hearing regarding his claim of ineffective assistance. This court remanded the matter for a new hearing on the defendant's motion with newly appointed counsel. [Citation.]

In interpreting *Krankel*, the following rule developed. New counsel is not automatically required in every case in which a defendant presents a *pro se* posttrial motion alleging ineffective assistance of counsel. Rather, when a defendant presents a *pro se* posttrial claim of ineffective assistance of counsel, the trial court should first examine the factual basis of the defendant's claim. If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro s*e motion. However, if the allegations show possible neglect of the case, new counsel should be appointed. [Citations.] The new counsel would then represent the defendant at the hearing on the defendant's *pro se* claim of ineffective assistance. [Citations.] The appointed counsel can independently evaluate the defendant's claim and would avoid the conflict of interest that trial counsel would experience if trial counsel had to justify his or her actions contrary to defendant's position. [Citations.]

The operative concern for the reviewing court is whether the trial court conducted an adequate inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel. [Citation.] During this evaluation, some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective

representation is permissible and usually necessary in assessing what further action, if any, is warranted on a defendant's claim. Trial counsel may simply answer questions and explain the facts and circumstances surrounding the defendant's allegations. [Citations.] A brief discussion between the trial court and the defendant may be sufficient. [Citations.] Also, the trial court can base its evaluation of the defendant's *pro se* allegations of ineffective assistance on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face. [Citations.]"

¶ 29 We agree with counsel that there is no arguably meritorious basis for challenging the adequacy of the *Krankel* hearing. Judge Cowlin thoroughly inquired into defendant's allegations that Stevens's assistance was ineffective. Defendant was given a full opportunity to explain her claims, and Stevens's responses were pertinent.

¶ 30 We next consider whether Judge Cowlin erred in rejecting defendant's claims of ineffective assistance. "[I]f the trial court has properly conducted a *Krankel* inquiry and has reached a determination on the merits of the defendant's *Krankel* motion, we will reverse only if the trial court's action was manifestly erroneous." *People v. Jackson*, 2020 IL 124112, ¶ 98. "Manifest error is error that is clearly evident, plain, and indisputable." *Id.*

¶ 31 Ineffectiveness claims are evaluated under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). This test requires a showing that counsel's performance "fell below an objective standard of reasonableness" and that the deficient performance was prejudicial in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

¶ 32 At the *Krankel* hearing, defendant complained about a lack of communication with Stevens. However, it does not appear that there was a complete lack of communication or that the

level of communication was insufficient for Stevens to prepare for any of the pretrial proceedings or the trial itself. Defendant also claimed that Stevens should have raised a hearsay objection to a portion of Redlin's testimony at the suppression hearing. However, an objection would have been futile because, "[i]n deciding [a] [suppression] motion, the normal rules of evidence do not apply and the trial court may consider hearsay evidence that would not be admissible at trial." *In re Kendale H.*, 2013 IL App (1st) 130421, ¶ 30.

¶ 33 Defendant further contended that Stevens should have filed a written response to the State's motion to increase her bond and argued more vigorously against the motion. However, Stevens explained that he had no basis for arguing the bond conditions did not prohibit the consumption of THC and that he made the most plausible argument he had available. Moreover, there is no reasonable probability that Stevens's arguments would have succeeded if only he had reduced them to writing. Finally, as counsel notes, the bond issue is moot now that defendant has been convicted. See *People v. Harris*, 38 Ill. 2d 552, 555 (1967); *People v. Saunders*, 122 Ill. App. 3d 922, 927-28 (1984).

¶ 34 Defendant also claimed that Stevens should have moved for substitution of judge for cause. She explained that Judge Wilbrandt's remarks in open court about her prior DUIs revealed his bias against her. However, the remarks pertained to Judge Wilbrandt's decision not to release defendant on bond without a SCRAM device. The remarks did not establish disqualifying bias that would justify a motion for substitution of judge for cause.

¶ 35 Concerning defendant's contention that Stevens should have subpoenaed Hintz to testify at trial, it is unclear how Hintz's testimony could have assisted the defense, yet entirely clear how he could have damaged the defense. Finally, even if Stevens pressured defendant into waiving her right to a jury trial, she was later permitted to withdraw the waiver and thus suffered no prejudice.

Thus, for the following reasons, Judge Cowlin's decision not to appoint counsel for defendant on her ineffectiveness claims was not manifestly erroneous.

¶ 36 We note that, in her lengthy response to appellate counsel's motion to withdraw, defendant introduces several matters that were not raised during the *Krankel* hearing and that, therefore, have no bearing on whether Judge Cowlin's decision was manifestly erroneous. We therefore conclude that there is no arguably meritorious basis for an appeal from that decision.

¶ 37                                   III. CONCLUSION

¶ 38 For the reasons stated, we grant counsel's motion to withdraw, and we affirm the judgment of the circuit court of McHenry County.

¶ 39 Affirmed.