NOTICE
Decision filed 04/18/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220339-U

NO. 5-22-0339

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Franklin County. |
| | ) | |
| v. | ) | No. 12-CF-335 |
| | ) | |
| CHRISTOPHER L. ROLLINS, | ) | Honorable |
| | ) | Thomas J. Tedeschi, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE CATES delivered the judgment of the court.
Justices Moore and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court's dismissal of the defendant's postconviction petition is reversed and the cause is remanded for second stage postconviction proceedings where the defendant demonstrated the gist of a constitutional claim of ineffective assistance of trial counsel.

¶ 2    Following a bench trial, the defendant, Christopher L. Rollins, was convicted of aggravated battery (720 ILCS 5/12-3.05(a)(2) (West 2012)) and sentenced to 30 years in the Illinois Department of Corrections (IDOC), followed by 3 years of mandatory supervised release (MSR), and ordered to pay restitution in the amount of $92,757.37. The defendant appealed the denial of a *pro se* posttrial motion asserting ineffective assistance of counsel in *People v. Rollins*, 2017 IL App (5th) 140578-U. We vacated the denial of the defendant's posttrial motion and remanded the cause for the circuit court to conduct a preliminary hearing on the defendant's claims of ineffective assistance of counsel as required by *People v. Krankel*, 102 Ill. 2d 181 (1984). See *Rollins*, 2017

1

IL App (5th) 140578-U. The circuit court conducted the inquiry on remand and denied the defendant's claims of ineffective assistance of counsel where trial counsel's decisions were a matter of trial strategy. The defendant appealed the circuit court's denial of his posttrial motion, and we affirmed the circuit court's decision in *People v. Rollins*, 2021 IL App (5th) 180451-U.

¶ 3      The defendant filed a postconviction petition claiming a violation of his constitutional right to effective assistance of counsel. The circuit court dismissed the defendant's petition at the first stage and found that the defendant's claims were barred by *res judicata* and wavier. The circuit court additionally found that the defendant's claims were frivolous, patently without merit, and he had failed to raise a significant constitutional issue. The defendant appeals the dismissal of his postconviction petition. For the following reasons, we reverse and remand for further proceedings.

¶ 4                                    I. BACKGROUND

¶ 5      On August 20, 2012, the defendant doused his girlfriend, Tessa Akin, with a flammable substance while she was sitting in their living room, and the substance ignited. Tessa was taken by ambulance to Herrin Hospital where she was intubated before being transferred for treatment to St. John's Mercy Hospital in St. Louis, Missouri. After 18 surgeries due to her severe burns, she lost fingers and remained permanently disfigured. The defendant was charged by information with aggravated battery pursuant to section 12-3.05(a)(2) of the Criminal Code of 2012 (720 ILCS 5/12-3.05(a)(2) (West 2012)), where he knowingly caused great bodily harm by throwing a flammable liquid onto the victim which he ignited. The matter proceeded to a bench trial.

¶ 6                                    A. Bench Trial

¶ 7      The circuit court held a bench trial on September 4, 2014. The victim, known as Tessa Akin at the time of the incident and Tessa Leech at the time of trial, testified that she lived with the defendant in West Frankfort, Illinois. On the afternoon of August 20, 2012, the defendant was

arguing with Tessa, and she wanted to leave. Tessa went into the living room where Seth Riddle and Thomas Jophlin were present. The victim testified that the defendant had told her to "sit the f*** down and shut the f*** up" and she sat in a recliner as directed. They continued to argue, and the Tessa told the defendant that "he didn't have to make life such hell." The defendant responded, "I'll show you hell, I'll put you there." He then walked out of the room and returned with an open jug of brake cleaner. The defendant doused Tessa with the fluid twice. Both hands were doused, and she had raised her arms up. While she was bringing her hands back down, "he struck the lighter just a couple of inches away from my right hand." She immediately ignited, and she threw herself to the floor. Tessa testified that Seth, Thomas, and the defendant all left the house while she was still on fire in the living room. Tessa ran out of the house and into the backyard where she rolled on the ground. She testified that a woman appeared to assist her before the ambulance arrived. Tessa was taken to the hospital and lost consciousness approximately three minutes into the ambulance ride. Tessa testified that she woke up in a St. Louis hospital "two months later."

¶ 8    Seth Riddle, the defendant's friend, testified that he had known the defendant for approximately 20 years. Riddle was present on the day of the incident and observed the defendant and Tessa arguing. Riddle testified that Tessa was sitting in a chair in the corner of the living room. The defendant left the room and returned with a white jug of liquid. The defendant doused Tessa with the contents of the jug without saying anything to her and then walked into the kitchen. After the defendant walked away, Tessa used a lighter on herself and caught on fire. Riddle went to the bathroom for water. When he returned from the bathroom, Tessa was gone. Riddle additionally testified that he was scared and left before help arrived.

¶ 9    Thomas Jophlin testified that he was at the defendant's home on the day of the incident. The defendant and Tessa were arguing. Tessa was sitting in a chair in the living room while the

defendant was going in and out of the room. Jophlin testified that the defendant, at one point, had a jug in his hand and splashed Tessa with the liquid contents while she was sitting in the chair. The defendant then walked into the kitchen. Tessa struck a lighter and she caught on fire. According to Jophlin, everyone panicked when Tessa was engulfed in flames. He grabbed a blanket and "stuffed it in the toilet to get water" to "smother the fire out." The defendant was also trying to help put out the fire. Jophlin testified that he went to a neighbor's house to call 911, while Tessa and the defendant were still in the house.

¶ 10    The defendant did not testify during the trial. Officer Ron Howard testified that he had conducted an interview with the defendant at the police station. A video of the defendant's interview was admitted into evidence. During the interview, the defendant stated that he had been arguing with Tessa and went through her purse because he suspected that she was cheating. The defendant admitted to splashing Tessa with liquid that he knew was flammable, and he had admitted to stating, "I'll burn you and this place down." The defendant explained that he was not serious when he made that statement, and he claimed that the victim lit herself on fire. The defendant informed the officers during his interview that Tessa had previously attempted to cut her wrist. The defendant additionally admitted that he left the scene before emergency assistance arrived to help his girlfriend. He had asked a stranger to drive him to a residence located in the opposite direction from the police station.

¶ 11    David Bandera, an investigator with the Office of the Illinois State Fire Marshal's Office, testified that he investigated the fire which caused the injury to Tessa. Bandera had taken photographs of the scene which were introduced into evidence. He determined that the fire began in the chair in the corner of the living room and the fire was contained to that room. Bandera additionally testified that he found a jug in the utility room that contained a volatile clear liquid.

4

¶ 12   The circuit court took the matter under advisement and announced its findings on September 16, 2014. The circuit court found that there was only one issue with conflicting evidence. That issue was whether the defendant caused the flammable substance to ignite after he poured it on the victim.

¶ 13   The circuit court based its decision on witness testimony and determined that Tessa was the most credible witness. She testified that the defendant threatened to burn her, put the substance on her, and ignited a flame. The circuit court believed that the victim would not have remained in the chair after someone had threatened her and then doused her with a flammable substance; therefore, the circuit court believed that the defendant immediately lit the fire to carry out his threat. Bandera provided his expert opinion that the fire originated in the chair to support the victim's testimony.

¶ 14   The circuit court considered that the defendant had referenced that the victim previously cut her wrist during his police interview, but no evidence was presented on a prior suicide attempt. The defendant admitted that he had threatened to burn the victim and burn the house down and admitted to pouring a flammable substance on the victim.

¶ 15   The circuit court additionally considered Riddle's testimony and Jophlin's testimony. They both recalled that the defendant had poured a substance on the victim after the defendant and the victim were arguing. They both testified that the victim lit a flame while the defendant was leaving the room. The circuit court considered that Riddle and Jophlin were friends with the defendant and neither witness recalled the details of the argument. The circuit court considered that they had both minimized the argument, and neither appeared shocked when they witnessed a person being doused with a flammable substance. Riddle, Jophlin, and the defendant left the scene and avoided immediately reporting what they had witnessed.

¶ 16    The circuit court found that the defendant committed the offense of aggravated battery beyond a reasonable doubt. The defendant had knowingly caused great bodily harm to Tessa by throwing a flammable liquid onto her and igniting the liquid.

¶ 17                              B. Postjudgment Motion and Sentencing

¶ 18    The defendant filed a *pro se* motion for a new trial on October 16, 2014. He claimed that he had new evidence of a prior inconsistent statement by Tessa which contradicted her trial testimony; the State committed prosecutorial misconduct; and trial counsel was ineffective for failing to adequately cross-examine the State's witnesses, failing to admit a prior inconsistent statement by Tessa, and failing to challenge Tessa's credibility.

¶ 19    The circuit court addressed the defendant's *pro se* motion prior to the sentencing hearing. Defense counsel advised the court that he intended on filing a motion after the sentencing hearing. The circuit court advised the defendant that he was represented, and the court would only consider pleadings filed by defense counsel. The circuit court additionally found that the defendant's motion was prematurely filed and considered his motion moot. The circuit proceeded with the sentencing hearing. The defendant was sentenced to 30 years in the IDOC, followed by 3 years of MSR, and ordered to pay $92,757.27 in restitution.

¶ 20    The defendant appealed in *Rollins*, 2017 IL App (5th) 140578-U, and requested that the circuit court conduct a preliminary inquiry into the defendant's claim of ineffective assistance of counsel. The State filed a confession of error and conceded that the circuit court erred in denying the defendant's posttrial motion without conducting an inquiry into the allegations of ineffective assistance of counsel. The denial of the defendant's posttrial motion was vacated and the cause was remanded for the circuit court to conduct a preliminary inquiry into the defendant's ineffective assistance of counsel claims.

¶ 21    The defendant filed an affidavit asserting that the victim lit herself on fire. The defendant additionally claimed that trial counsel provided ineffective assistance of counsel where he failed to show discovery to the defendant, and that during the trial, defense counsel failed to address the victim's prior inconsistent statements.

¶ 22    The circuit court subsequently held a hearing on the defendant's ineffective assistance of counsel claims raised in his posttrial motion. Trial counsel for the defendant had retired, and no longer represented the defendant. Trial counsel testified at the hearing that the victim was severely burned and that "it was not a good idea to beat up a victim on a witness stand, that they get—if they are showing scars, particularly." He believed that the defendant's intention was to "cause her more problems" and the victim would not have said anything to help the defendant's case.

¶ 23    The defendant argued that trial counsel was ineffective for failing to introduce a prior inconsistent statement of Tessa. The defendant argued that in a statement made prior to trial, Tessa said that the defendant "wasn't the only one that poured this substance on her." The defendant had addressed Tessa's inconsistent statements two times during the trial with trial counsel and trial counsel dismissed his requests. The defendant argued that trial counsel failed to investigate prior suicide attempts by Tessa and refused to call witnesses to testify to Tessa's suicide attempt. The defendant additionally claimed that his trial attorney had not recovered two confiscated cell phones. He argued that the information on the cell phone would have undermined Tessa's credibility because she had contacted him 30 minutes prior to the incident.

¶ 24    The defendant additionally claimed that he was innocent, and the jug used to pour the substance on the victim was found in the utility room. While the defendant was explaining his argument, the circuit court interjected and stated,

7

"Okay. [Defendant], stay here with me now. We are not here to retry the case. We are here for me to do a preliminary inquiry into your ineffective assistance of counsel claim as to the motion that's been filed by you."

The defendant continued to argue that his attorney was ineffective for failing to have an expert witness testify to the fire damage to support his position.

¶ 25    The circuit court found that the defendant's claims of ineffective assistance of counsel pertained to matters of trial strategy. The defendant's motion was denied, and he appealed the circuit court's decision.

¶ 26    The defendant filed a second appeal in *Rollins*, 2021 IL App (5th) 180451-U, where he argued that the circuit court's denial of his ineffective assistance of counsel claims on the merits was manifestly erroneous. We addressed the defendant's ineffective assistance of counsel claim that trial counsel failed to introduce the victim's prior inconsistent statement and that trial counsel failed to investigate potential witnesses to the victim's suicide attempt. We determined that the circuit court's determination pertained to trial strategy and was not manifestly erroneous and the circuit court did not err in denying the defendant's *pro se* posttrial motion alleging ineffective assistance of trial counsel.

¶ 27                                  C. Postconviction Petition

¶ 28    On February 8, 2022, the defendant filed a *pro se* petition for postconviction relief claiming that his sixth amendment right to effective assistance of counsel was substantially violated. The defendant claimed that he submitted a Freedom of Information Act (FOIA) request to the West Frankfort Police Department on July 26, 2021, and received a redacted copy of his casefile, which included a report from the Fire Marshal. The defendant claimed that he had not received the report

8

prior to trial and that his trial counsel had withheld the fire report. The defendant attached a copy of the fire report to his petition as well as a copy of his FOIA request.

¶ 29    The defendant asserts that the fire report demonstrated that the jug of flammable liquid was found in the utility room and that the backdoor near the utility room was nailed shut. The utility room was only accessible from the inside of the house. A diagram was included in the report and depicted that the utility room was two rooms away from the living room. The defendant claims that this evidence contradicted the victim's testimony of the events where the victim had testified that the jug of volatile substance was in the defendant's hand when he lit the fire.

¶ 30    The defendant additionally claimed that trial counsel failed to investigate prior suicide attempts by the victim and trial counsel failed to obtain cell phone information demonstrating that the defendant had attempted to call 911. The defendant attached a letter from his appellate counsel to the West Frankfort Police Department requesting the cell phone evidence to be preserved during the defendant's appeal and postconviction proceeding.

¶ 31    The defendant attached multiple affidavits to his postconviction petition. He averred that the fire report corroborated Riddle, Jophlin, and the defendant's statements that the defendant had returned the liquid to the utility room after he poured the liquid on the victim. The victim, on the other hand, had testified that the defendant left through the front door after lighting her on fire. Through an additional affidavit, the defendant averred that he had poured brake cleaner onto the victim's lap, and then told everyone not to light anything while he was returning the container to the utility room. The defendant provided an affidavit regarding trial counsel's opinion to waive a jury trial; that the defendant had provided trial counsel with witness information to testify that the victim had previously cut her wrists, and trial counsel's decision to refrain from using the victim's prior statements on cross-examination. The defendant attached an affidavit where he averred that

9

trial counsel was biased towards him. The defendant additionally attached an affidavit where he averred that he had called "991" instead of "911" because he was panicking after the victim had "lit herself on fire." The defendant had informed his attorney about the phone evidence, and he did not obtain or present evidence that the defendant sought to help the victim.

¶ 32    The defendant asserted that had trial counsel obtained and presented the additional evidence, the outcome of the trial would have been different where the evidence was closely balanced. Trial counsel, however, failed to do so and refused to challenge the credibility of the victim. The defendant maintained that his constitutional rights were violated where his counsel provided ineffective assistance.

¶ 33    The circuit court summarily dismissed the petition at the first stage finding that the defendant's claims were barred by *res judicata* and waiver. The circuit court considered that the defendant raised the same claims on direct appeal and that all claims challenging ineffective assistance of counsel were barred. The circuit court additionally found that the petition was frivolous, patently without merit, and failed to raise a significant constitutional issue.

¶ 34                                II. ANALYSIS

¶ 35    On appeal, defendant argues that the circuit court erred in summarily dismissing his *pro se* postconviction petition at the first stage of the proceedings based on *res judicata* and waiver where he had introduced facts that were not part of the original appellate record. The defendant additionally argues that the circuit court erred in dismissing his *pro se* postconviction petition where he asserted constitutional claims that have an arguable basis in fact and law.

¶ 36    The Post-Conviction Hearing Act (Act) sets forth a three-stage procedure through which a defendant may challenge his conviction based on allegations of a substantial denial of his constitutional rights. 725 ILCS 5/122-1(a)(1) (West 2020); *People v. Hodges*, 234 Ill. 2d 1, 9

10

(2009). A postconviction proceeding is a collateral attack on the trial court proceedings and not an appeal from the judgment of conviction. *People v. English*, 2013 IL 112890, ¶ 21. "Proceedings under the Act advance through three stages." *People v. Morales*, 2019 IL App (1st) 160225, ¶ 17.

¶ 37 At the first stage of postconviction proceedings, the circuit court determines whether the defendant's petition is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2020); *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). A petition is considered frivolous or patently without merit if the defendant's allegations, taken as true, fail to state the gist of a meritorious constitutional claim. *People v. Collins*, 202 Ill. 2d 59, 66 (2002). The circuit court may summarily dismiss a petition as frivolous or patently without merit if the petition has "no arguable basis either in law or in fact." *Hodges*, 234 Ill. 2d at 16; 725 ILCS 5/122-2.1(a)(2) (West 2020). "If the petition passes that low bar, it is docketed for second-stage proceedings." *Morales*, 2019 IL App (1st) 160225, ¶ 17.

¶ 38 "*Res judicata* and forfeiture fall within the plain language of 'frivolous or *** patently without merit' in section 122-2.1(a)(2), which permits summary dismissal." *People v. Blair*, 215 Ill. 2d 427, 450 (2005). 725 ILCS 5/122-2.1(a)(2) (West 2020). "Issues that were raised and decided on direct appeal are barred by *res judicata*, and issues that could have been raised on direct appeal, but were not, are forfeited." *English*, 2013 IL 112890, ¶ 22. "[T]he doctrines of *res judicata* and forfeiture are relaxed where fundamental fairness so requires, where the forfeiture stems from the ineffective assistance of appellate counsel, or where the facts relating to the issue do not appear on the face of the original appellate record." *English*, 2013 IL 112890, ¶ 22.

¶ 39 We note that the circuit court found the defendant had "waived" his claims; however, the term "forfeiture" refers to "issues that could have been raised, but were not, and are therefore

barred." *Blair*, 215 Ill. 2d at 443. This court reviews the circuit court's dismissal of a petition at the first stage of the proceedings *de novo*. *Hodges*, 234 Ill. 2d at 9.

¶ 40 The defendant argues that he asserted a constitutional claim where the sixth amendment guarantees his right to effective assistance of trial counsel. See *People v. Brown*, 2017 IL 121681, ¶ 25. A claim of ineffective assistance of counsel is evaluated under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). A defendant must show that trial counsel's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result of counsel's deficient performance. *Strickland*, 466 U.S. at 687-88.

¶ 41 The defendant does not have a constitutional right to read the discovery materials provided to his attorney. *People v. Walker*, 2019 IL App (3d) 170374, ¶ 16. An attorney's decision to share discovery materials with a defendant is "afforded a strong presumption that it was the product of sound trial strategy rather than incompetence." *Walker*, 2019 IL App (3d) 170374, ¶ 18. The presumption is rebuttable and may be overcome where the decision appeared irrational, and no reasonable effective attorney would pursue that strategy. *Walker*, 2019 IL App (3d) 170374, ¶ 18. Prejudice is shown where there was a reasonable probability that the result of the proceedings would have been different, but for counsel's deficient performance. *People v. Lucious*, 2016 IL App (1st) 141127, ¶ 45.

¶ 42 A postconviction petition alleging ineffective assistance of counsel may not be summarily dismissed at the first stage if "it is arguable that counsel's performance fell below an objective standard of reasonableness" and "it is arguable that the defendant was prejudiced." *Hodges*, 234 Ill. 2d at 17. If apparent on the record, a defendant is required to raise ineffective assistance of counsel claims on direct review. *People v. Veach*, 2017 IL 120649, ¶ 46. Ineffective assistance of

12

counsel claims, however, are sometimes better suited as collateral proceedings where the record is incomplete or inadequate for resolving the claims. *Veach*, 2017 IL 120649, ¶ 46.

¶ 43    The defendant asserted in his petition that he obtained reports from the West Frankfort Police Department pursuant to a July 26, 2021, FOIA request. The documents received were related to his conviction and were acquired after the February 18, 2021, decision in *Rollins*, 2021 IL App (5th) 180451-U.

¶ 44    According to the defendant, his trial counsel never shared or discussed the contents of these reports with the defendant. The defendant attached a copy of the FOIA request, and the reports received from that request. The defendant could not have raised a specific claim of ineffective assistance of defense counsel on direct appeal based on reports not contained in the record.

¶ 45    The fire report included a diagram of the house and indicated that the flammable solution was found in a utility closet that was not accessible from the backdoor of the house which was nailed shut. The defendant claims that he would not have been able to return the jug to the utility room based on the victim's account of the events. Had trial counsel elicited facts from the contents of the report to cross-examine Bandera, it is arguable that Bandera would have testified to information that would have contradicted the victim's testimony that the defendant lit her on fire and immediately ran out of the house.

¶ 46    The defendant additionally received police reports which contained witness accounts from the day of the incident. The circuit court questioned the credibility of Riddle and Jophlin where they were unable to recall information. The statements in the police report by Riddle and Jophlin supported the defendant's claim that the victim lit herself on fire when the defendant was returning the jug of flammable liquid to the utility closet. The defendant contends that had his trial counsel

13

used the police reports to refresh witness testimony, the circuit court would have reached a different conclusion based on its credibility findings.

¶ 47    The defendant's petition created a basis for arguing that trial counsel's performance fell below an objective standard of reasonableness. Additionally, it is arguable that the defendant was prejudiced where trial counsel had not elicited testimony based on the fire report and police reports that the defendant obtained through his FOIA request.

¶ 48    Because the Act does not permit partial summary dismissals, we need not address the remainder of his ineffective assistance of counsel claims. *Morales*, 2019 IL App (1st) 160225, ¶ 43. We cannot say that defendant's petition lacked an arguable basis in fact or law where the defendant's petition set forth sufficient facts and supporting documents to state the gist of a claim of ineffective assistance of counsel related to reports that he had obtained after his direct appeals.

¶ 49                                    III. CONCLUSION

¶ 50    For the foregoing reasons, we reverse the order of the circuit court of Franklin County and remand the matter for further proceedings.

¶ 51    Reversed and remanded.