NOTICE
Decision filed 07/11/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 241005-U

NO. 5-24-1005

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Fayette County. |
| | ) | |
| v. | ) | No. 22-CF-3 |
| | ) | |
| ANDREW B. CLARK, | ) | Honorable |
| | ) | Allan F. Lolie Jr., |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices Moore and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Where there is no arguable merit to this direct appeal, appellate counsel is granted leave to withdraw, and the judgment of conviction is affirmed.

¶ 2    Pursuant to a fully negotiated plea agreement with the State, the defendant pleaded guilty to possession of cannabis (more than 5,000 grams) and was sentenced to imprisonment for a term of six and one-half years. He filed a motion to withdraw guilty plea and a motion to reconsider sentence. The circuit court denied both motions. The defendant now appeals. Having reached the conclusion that this appeal lacks substantial merit, the defendant's appointed counsel on appeal, the Office of the State Appellate Defender (OSAD), has filed a motion to withdraw as counsel, along with a supporting brief. See *Anders v. California*, 386 U.S. 738 (1967); *People v. Jones*, 38 Ill. 2d 384 (1967). OSAD served the defendant with notice, and this court gave him an opportunity

1

to respond, but the defendant has not filed any type of response. Having examined OSAD's *Anders* motion and brief, as well as the entire record on appeal, this court agrees that the instant appeal lacks merit. Accordingly, we grant OSAD leave to withdraw as counsel and affirm the judgment of the circuit court.

¶ 3                                    BACKGROUND

¶ 4      In January 2022, the defendant was charged with (count I) possession of cannabis (more than 5,000 grams), a Class 1 felony, and (count II) possession of cannabis (more than 5,000 grams) with intent to deliver, a Class X felony. In June 2023, the public defender was appointed to represent the defendant. The same public defender represented the defendant throughout the proceedings in the circuit court.

¶ 5      On April 5, 2024, the defendant, his public defender, and a prosecutor appeared before the circuit court. The prosecutor announced a plea agreement whereby the defendant would plead guilty to count I in exchange for the dismissal of count II. The prosecutor indicated that there was no agreement as to a specific sentence but that any sentence of imprisonment would be capped at 10 years. The defendant confirmed that the prosecutor had accurately stated the parties' agreement.

¶ 6      Proceeding to admonishments, the circuit court informed the defendant of the nature of the charge, which was a Class 1 felony, and of the possible penalties, including imprisonment for a term of 4 to 15 years, probation for up to 4 years, and a fine up to $25,000. The defendant indicated that he understood the charge and the possible penalties. Continuing with the admonishments, the court informed the defendant that by pleading guilty, he was "giving up" his right to persist in his plea of not guilty; his right to a trial, where the State would be obligated to present evidence and to prove the defendant guilty beyond a reasonable doubt, in front of a judge or a jury, whichever the defendant chose; the presumption of innocence; his right to confront and cross-examine the

2

State's witnesses; his right to present evidence; and his right to subpoena witnesses. The defendant indicated that he understood. Furthermore, the court stated that the defendant could not be forced to testify at trial, or forced to present evidence, or even a defense, at trial. The defendant indicated that he understood.

¶ 7    The defendant pleaded guilty to count I, and he signed a written plea of guilty to that count. In response to additional questions by the circuit court, the defendant indicated that nobody, in order to obtain his guilty plea, had promised him anything, apart from the plea agreement, or threatened him in any way. The defendant indicated, and the court so found, that the defendant was pleading guilty freely and voluntarily. The prosecutor provided a factual basis for the plea, essentially stating that the police stopped the defendant in a car for minor traffic violations and ultimately found, in the car's trunk, 79 vacuum-sealed packages of cannabis weighing approximately 42,000 grams. In answer to the court's questions, the public defender indicated that he had no objection to the factual basis, and the defendant agreed that the State, at a trial, could have presented witnesses in support of the facts stated. The court determined that there was a sufficient factual basis.

¶ 8    Then, the circuit court stated, "This is your last chance to change your mind here today." The defendant indicated that he had discussed the plea with his public defender and did not need any more time to speak with him. The defendant also indicated that he wished to stand by his plea of guilty. The court found that the defendant "knowingly persists in his plea of guilt." It ordered the probation department to prepare a presentence investigation report (PSI).

¶ 9    The PSI showed that in 2007, the defendant was convicted of reckless driving, a misdemeanor, in California. Apparently, the defendant had no other convictions since that time. The defendant reported that he had been using marijuana daily since he was 13 years old. He also

3

reported several chronic health problems, including Lyme disease, thoracic back pain, and neuropathy.

¶ 10    On May 31, 2024, the circuit court held a sentencing hearing. The State presented no evidence in aggravation. In mitigation, the public defender presented four witnesses, including the defendant. The defendant testified that he was diagnosed with Lyme disease in 2018, and that his symptoms included fatigue, muscle spasms, and pain. The disease also affected his mental processing and physical dexterity. "Cannabis," the defendant testified, "helps me to stay in my body and get to think past my physical." He claimed to have been prescribed cannabis by a physician in California, in connection with the Lyme disease. As for the large amount of cannabis that was found in his possession, the defendant explained that the part he uses for medicinal purposes is a very small part of the whole plant.

¶ 11    Also testifying in mitigation was a woman who was in the same church "support group" as the defendant. She stated that the group was for people living in pain, and that the defendant was a vital part of the group, always eager to help and encourage others. A family physician from Missouri testified in mitigation. She testified that the defendant was her patient, and that he suffered mainly from the effects of Lyme disease, including pain and neuropathy. She was aware of the defendant's use of medical marijuana, but she was not the prescribing physician.

¶ 12    During argument, the State recommended a sentence of imprisonment for eight years because the amount of cannabis suggested that it was for distribution. The public defender requested probation, in part, because of the defendant's need for medical treatment. The circuit court examined the various factors in aggravation and mitigation suggested by the prosecutor and the defense, and it found that probation would deprecate the seriousness of the offense. The defendant was sentenced to imprisonment for a term of six and one-half years, to be followed by

4

one year of mandatory supervised release, plus a fine and assessment. Finally, the court advised the defendant of his appeal rights, and of the steps necessary to preserve them, and the defendant indicated his understanding.

¶ 13    On June 4, 2024, the defendant filed a motion to withdraw his guilty plea. He alleged only that his plea "was not entered knowingly and voluntarily." On June 18, 2024, the defendant filed a motion to reconsider sentence. He alleged that his sentence was excessive, in light of his history and potential for rehabilitation. On September 4, 2024, the public defender filed a certificate of compliance with Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024). The contents of the certificate will be discussed *infra*.

¶ 14    Also on September 4, 2024, the circuit court called a hearing on the defendant's motions. In regard to the motion to withdraw plea, the defendant was the only witness. The public defender essentially invited him to elaborate on what he meant when he alleged in his motion that his plea was not knowing and voluntary. The defendant answered that he had arrived at court on April 5, 2024, intending to examine the discovery in his case, but unexpectedly, he was "proposed with the plea." He entered his guilty plea that same day. However, he would not have entered the plea if he had examined the discovery first, and specifically, if he had watched "the video" and had read "the notes from the incident" first. "[T]here's a lot of audio and several videos from other officers and the questioning of [the defendant's companion in the car] is not there and the justifying of—from the—what they said in the PDF was [the defendant's companion in the car] denying the statement did not match." Also, "there's a lot of questionable activity" on the video, the defendant stated, in terms of "[c]amera angles" and people "using hand signs and not using words." The defendant expressed his belief that conversations were deliberately not captured on video or audio.

¶ 15    The circuit court found that the defendant's plea was "freely and voluntarily" made. The court added that "nothing" in the defendant's testimony would have caused defense counsel to file a motion to suppress evidence seized in the case.

¶ 16    After ruling on the motion to withdraw guilty plea, the circuit court took up the defendant's motion to reconsider sentence, filed on June 18, 2024. The public defender proffered that the defendant, since the start of his imprisonment, had experienced increased nausea, muscle spasms, and extreme fatigue, and had a higher heart rate than before his imprisonment. The public defender also proffered that the defendant was more depressed due to no longer having access to Lyme disease specialists. For argument, the public defender stated that the sentencing court should have given greater weight to (1) the danger that imprisonment would pose to the defendant's medical condition; (2) the defendant's motivation to use cannabis for the relief of symptoms of Lyme disease, a motivation that tended to excuse or to justify the defendant's criminal conduct, though it failed to establish a defense; and (3) the defendant's law-abidingness for a substantial period of time before committing the instant offense. The prosecutor argued that the amount of cannabis found in the defendant's possession, 94 pounds, was "beyond personal use cannabis" and evidenced "an intention to introduce it into other communities." The court denied the motion to reconsider sentence, finding that it already considered the factors in aggravation and mitigation, as reflected in the sentencing transcript. Finally, the court admonished the defendant about his appeal rights, and the defendant indicated that he did not have any questions.

¶ 17    The defendant, by his public defender, filed a timely notice of appeal from the orders denying his motion to withdraw guilty plea and his motion to reconsider sentence.

¶ 18                                    ANALYSIS

¶ 19    In the brief filed in support of its *Anders* motion, OSAD raises four potential issues for review. We address these four potential issues in turn.

¶ 20    OSAD's first potential issue in this appeal is whether the circuit court erred in denying the defendant's motion to withdraw his guilty plea. A ruling on a motion to withdraw a guilty plea rests in the sound discretion of the circuit court. *People v. Davis*, 145 Ill. 2d 240, 244 (1991). Appellate review of such a ruling is under the abuse-of-discretion standard. *People v. Burge*, 2021 IL 125642, ¶ 37. An abuse of discretion will be found only "where the court's ruling is arbitrary, fanciful, unreasonable, or no reasonable person would take the view adopted by the trial court." *People v. Delvillar*, 235 Ill. 2d 507, 519 (2009).

¶ 21    "A defendant has no absolute right to withdraw his guilty plea." *People v. Hughes*, 2012 IL 112817, ¶ 32. "A plea of guilty is a grave act that is not reversible at the defendant's whim." *People v. Reed*, 2020 IL 124940, ¶ 47. The circuit court should grant leave to withdraw a guilty plea only "as required to correct a manifest injustice under the facts involved." *People v. Hillenbrand*, 121 Ill. 2d 537, 545 (1988).

¶ 22    In the motion to withdraw his guilty plea, the defendant alleged only that his plea "was not entered knowingly and voluntarily." A plea of guilty cannot be constitutionally valid unless the record affirmatively shows that it was knowingly and voluntarily made. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). This rule stems from the fact that a plea of guilty represents a waiver of several constitutional rights, including the right to a trial by jury and the right to confront one's accusers. *Id.* at 243. In order to ensure compliance with the requirements of *Boykin*, our supreme court adopted Illinois Supreme Court Rule 402 (eff. July 1, 2012). *People v. Wills*, 61 Ill. 2d 105, 111 (1975).

7

¶ 23    Rule 402(a) states that the court shall not accept a plea of guilty without informing the defendant personally in open court, and determining that he understands, (1) the nature of the charge; (2) the minimum and maximum sentence prescribed by law; (3) that the defendant has the right to persist in his plea of not guilty, or to plead guilty; and (4) that if he pleads guilty, there will not be a trial of any kind, and that by pleading guilty, he waives the right to a trial and the right to be confronted with the witnesses against him. Ill. S. Ct. R. 402(a) (eff. July 1, 2012). Rule 402(b) states that the court shall not accept a plea of guilty without first determining that the plea is voluntary. Ill. S. Ct. R. 402(b) (eff. July 1, 2012). If the tendered plea was the result of a plea agreement, the agreement shall be stated in open court, and the court, by questioning the defendant personally, shall confirm the agreement's terms, and shall determine whether any force or threats, or any promises apart from the plea agreement, were used to obtain the plea. Ill. S. Ct. R. 402(b) (eff. July 1, 2012). Rule 402, and thus due process, is satisfied if the circuit court substantially complies with the rule. *People v. Fuller*, 205 Ill. 2d 308, 323 (2002).

¶ 24    In the instant case, the prerequisites of a knowing and voluntary plea are spread across the transcript of the defendant's guilty-plea hearing. The defendant indicated that he understood the nature of the charge, the possible sentences, his right to a trial, his rights at trial, including the right to be confronted with the witnesses against him, and that his guilty plea would operate as a waiver of rights. Also, the defendant confirmed the terms of the parties' plea agreement. He indicated that no threats, or any promise apart from the plea agreement, were used to obtain the plea. When the circuit court asked the defendant whether he was pleading guilty "freely and voluntarily," he answered, "Yes." See, *e.g.*, *People v. Ramirez*, 162 Ill. 2d. 235, 243 (1994) (the defendant's allegation that his guilty plea was coerced was refuted by defendant's responses to the circuit court's questions at the guilty-plea hearing, as the record showed).

¶ 25 Where a defendant alleges that his guilty plea was not knowing or voluntary, and he moves to withdraw the guilty plea on that basis, he bears the burden of demonstrating to the circuit court the necessity of allowing him to withdraw it. *Davis*, 145 Ill. 2d at 244. Here, the defendant did not demonstrate that necessity. There was no "manifest injustice" (see *Hillenbrand*, 121 Ill. 2d at 545) in the plea. Therefore, the circuit court did not abuse its discretion in denying the motion to withdraw it.

¶ 26 In its *Anders* brief, OSAD points to the defendant's testimony at the hearing on his motion to withdraw guilty plea (described *supra*) and suggests that this testimony presented an allegation of ineffective assistance of plea counsel. Specifically, OSAD notes that the testimony indicated that plea counsel rendered ineffective assistance by failing to ensure that the defendant examined discovery before accepting the State's offer and pleading guilty.

¶ 27 The two-prong *Strickland* standard (*Strickland v. Washington*, 466 U.S. 668 (1984)), slightly modified, applies where a guilty-plea defendant claims ineffective assistance of plea counsel. *People v. Brown*, 2017 IL 121681, ¶¶ 21, 26. Plea counsel is ineffective where (1) his representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Id.* ¶ 26 (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). "Decisions regarding which items received in discovery that a defense attorney chooses to share with or discuss with his or her client is a matter of trial strategy." *People v. Walker*, 2019 IL App (3d) 170374, ¶ 18. "As such, that decision is afforded a strong presumption that it was the product of sound trial strategy rather than incompetence." *Id.* "That presumption, however, is rebuttable." *Id.*

¶ 28 However, as OSAD states, the defendant did not rebut the presumption that plea counsel's decision regarding discovery—*i.e.*, not making sure that the defendant examined discovery before

pleading guilty—was sound strategy. The defendant could have played, for the judge at the motion hearing, the actual police videos that he attempted to describe. However, he did not play those videos for the judge, despite his testifying that if he personally had seen the videos prior to pleading guilty, he would have chosen not to plead guilty and to proceed to trial. The presumption of sound strategy stood unrebutted. As OSAD concludes, the defendant "cannot show prejudice" from his public defender's handling of discovery.

¶ 29    OSAD's second potential issue in this appeal is whether the trial court erred in excessively sentencing the defendant. The defendant pleaded guilty pursuant to a fully negotiated plea agreement with the State, and he received a sentence in accordance with that agreement. Illinois Supreme Court Rule 604(d) prevents a defendant who enters a negotiated plea from challenging his sentence as excessive:

> "No appeal shall be taken upon a negotiated plea of guilty challenging the sentence as excessive unless the defendant, within 30 days of the imposition of sentence, files a motion to withdraw the plea of guilty and vacate the judgment. For purposes of this rule, a negotiated plea of guilty is one in which the prosecution has bound itself to recommend a specific sentence, or a specific range of sentence, or where the prosecution has made concessions relating to the sentence to be imposed and not merely to the charge or charges then pending." Ill. S. Ct. R. 604(d) (eff. Apr. 15, 2024).

Given the unambiguous language of Rule 604(d), the circuit court should not have ruled on the merits of the motion to reconsider sentence. Striking the motion would have been appropriate.

¶ 30    OSAD's third potential issue is whether the defendant was properly admonished under Illinois Supreme Court Rule 402 (eff. July 1, 2012) ("Pleas of Guilty or Stipulations Sufficient to Convict"). After this court's discussion of OSAD's first potential issue (*i.e.*, whether the circuit

court erred in denying the defendant's motion to withdraw his guilty plea), there can be no doubt that he was properly admonished under Rule 402. He was informed, and he indicated his understanding, of the nature of the charge, of the possible sentences, of his right to a trial, of his rights at trial, and of a guilty plea's operation as a waiver of rights. He also indicated that no threats, and no promises apart from the plea agreement, were used to obtain his guilty plea. By its own terms, Rule 402 requires only "substantial compliance." See also *Fuller*, 205 Ill. 2d at 323 ("Substantial compliance with Rule 402 is sufficient to establish due process."). " 'Substantial compliance' means that although the trial court did not recite to the defendant, and ask defendant if he understood, all the components of Rule 402(a), the record nevertheless affirmatively and specifically shows that the defendant understood them." *People v. Dougherty*, 394 Ill. App. 3d 134, 138 (2009). Based on our review of the record, this standard certainly was met in the present case.

¶ 31    The fourth potential issue is whether the public defender who represented the defendant complied with Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024). This court reviews *de novo* whether counsel strictly complied with the provisions of Rule 604(d). *People v. Gorss*, 2022 IL 126464, ¶ 10.

¶ 32    Rule 604(d) requires, as a prerequisite to appeal from a judgment entered upon a plea of guilty, that counsel appointed to represent the defendant on his postplea motion shall file the following with the circuit court:

> "a certificate stating that the attorney has consulted with the defendant either by phone, mail, electronic means or in person to ascertain defendant's contentions of error in the sentence and the entry of the plea of guilty, has examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing

11

hearing, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." Ill. S. Ct. R. 604(d) (eff. Apr. 15, 2024).

¶ 33    Here, the defendant's public defender filed a Rule 604(d) certificate on September 4, 2024. The language of his certificate closely tracks the language of Rule 604(d). Given their similarity, OSAD reasonably concludes, "there is no viable argument that counsel failed to strictly comply with Rule 604."

¶ 34                                                    CONCLUSION

¶ 35    Each of the potential issues raised by OSAD in its *Anders* brief lacks arguable merit. Having examined the record on appeal, this court has been unable to identify any other issue that could disturb the judgment in this case. Accordingly, OSAD is granted leave to withdraw as appellate counsel, and the judgment of conviction and sentence is affirmed.

¶ 36    Motion granted; judgment affirmed.